IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

POLLYANNA WILLIAMS,

                Plaintiff,

          v.

CAROLYN W. COLVIN,
Commissioner of Social Security

                Defendant.

No. 1:13-cv-1720-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

        Pollyanna Williams challenges the Commissioner's decision denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is reversed and remanded for additional proceedings.

Page 1 - OPINION AND ORDER

*Procedural Background*

Williams filed her applications for DIB and SIS on June 22 and 14, 2010, alleging disability since September 25, 2007, due to severe physical and mental impairments, including fibromyalgia; status post lumbar fusion, fractures, spondylosis, and spondylolisthesis; status post left wrist open reduction internal fixation and hardware removal; status post carpal tunnel syndrome release, right trigger thumb, and Dupuytren's contracture release; mild osteopenia bilaterally in her hands; and bilateral metatarsophalangeal osteoarthritis and bunions; chronic insomnia; depression, obsessive-compulsive disorder, Bipolar II, and post-traumatic stress disorder. Williams alleged a disability onset date of April 1, 2006. Williams's applications were denied initially and upon reconsideration. On June 6, 2012, after a timely request for a hearing, Williams appeared by video and testified before an administrative law judge ("ALJ"). Williams was represented by counsel, Marlene Yesquen. Steve Cardinal, an impartial vocational expert ("VE"), also appeared and testified. Following the hearing, the record was left open until June 13, 2012, for Williams's representative to file a medical source statement. No additional medical source statements were filed.

On June 29, 2012, the ALJ issued a decision finding Williams not disabled, as defined by the Act. Williams filed a request for review of the ALJ's decision. On July 23, 2013, the Appeals Council denied Williams's request for review of the ALJ's decision, making it the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210.

*Discussion*

The court reviews the Commissioner's decision to ensure the proper legal standards were applied and the findings were supported by substantial evidence in the record. 42 U.S.C. § 405(g). *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ applied

the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen*

*v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ resolved Williams's claim at Step Four of that

process, determining the severity of Williams's impairments, individually and in combination, did

not meet or medically equal the criteria of Listings § 1.02 or § 1.04. As such, Williams retained the

residual functional capacity ("RFC") to perform her past work. Additionally, the ALJ also noted

Williams could perform other work in the national economy.

A claimant's RFC is an assessment of the sustained work-related activities she can still do

on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§

404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p. The ALJ assessed Williams's RFC

as follows:

> [T]he claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except she
> can lift/carry 20 pounds occasionally and 10 pounds frequently. In an
> 8-hour workday, she can stand/walk for 2 hours and sit for 6 hours.
> She can occasionally balance, stoop, kneel, crouch, or crawl. She can
> occasionally climb ramps, stairs, ladders, or scaffolds. Finally , she
> can frequently handle bilaterally.

(Tr. 22)[1]


Williams asserts several challenges to the ALJ's decision to deny her benefits application.

Specifically, she contends the ALJ failed to properly reject the opinion of her treating physician,

Kristine A. Groskopp, D.O.; and the ALJ committed error by substituting his own opinion for that

of Dr. Groskopp's. Next, Williams charges the ALJ failed to properly consider the combined effect

---

[1] "Tr." refers to the official transcript of the administrative record.  (Docket # 13.)

of her many impairments, severe and non-severe, to determine whether in combination those impairments would satisfy a specified Listing. Thirdly, Williams contends the ALJ erred in assessing her credibility and failed to make specific findings. Finally, Williams maintains the ALJ relied upon an incomplete hypothetical to the VE and disregarded the VE's testimony that included all of her impairments.

As explained below, the court finds the ALJ failed to set forth specific and legitimate reasons for discounting Dr. Groskopp's medical testimony. In addition, the ALJ failed to provide clear and convincing reasons for rejecting Williams's subjective testimony regarding her pain and symptoms. The ALJ's failure to consider properly the testimony of Dr. Groskopp and Williams resulted in an incomplete hypothetical to the VE. Further, the ALJ's RFC determination is not supported by substantial evidence in the record. All of these issues must be resolved by the ALJ before a determination of disability can be made. Upon remand, the ALJ is required to complete the five-step disability determination. Accordingly, the decision of the ALJ is reversed and the case is remanded for additional proceedings.

I.    Dr. Groskopp - Treating Physician

Williams argues the ALJ completely rejected the opinion of her treating physician, Dr. Groskopp, without providing clear and convincing reasons. In addition, Williams challenges the ALJ's decision to credit the findings of the examining physician, Dr. Jeffery Solomon's, over those of Dr. Groskopp's on the issue of disability.

To establish a physical or mental impairment, a claimant must provide evidence from medical sources. The Code of Federal Regulations ("Code") defines "acceptable medical sources" as: licensed physicians, optometrists and, podiatrists; licensed or certified psychologists; and

qualified speech language pathologists. 20 C.F.R. § 404.1513(a). Further, a distinction is made among the opinions of three types of physicians: (1) those who treat the claimant ("treating physician"); (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat claimant, but review claimant's medical records ("non-examining physician"). 20 C.F.R. § 404.1527(d); *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). Regardless of the classification of a particular medical provider, the ALJ is never relieved of his obligation to consider evidence submitted by each source and provide some reason for rejecting that evidence. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Generally more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *Holohan*, 246 F.3d at 1201-02; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician (or examining physician) without providing "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotations and citation omitted).

If, however, a treating physician's opinion is contradicted by another acceptable medical source, an ALJ may reject the treating doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2004). This is so because, even when contradicted, a treating physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for

controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the

"substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.

Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than state conclusions. He must

set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

In fact, Social Security Regulations provide that, when a treating source's opinions are not

given controlling weight, ALJs must apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i-ii)

and (c)(3-6) in determining how much weight to give each opinion. These factors are length of the

treatment relationship and the frequency of examination, § 404.1527(c)(2)(i), nature and extent of

the treatment relationship, § 404.1527(c)(2)(ii), "supportability," § 404.1527(c)(3), consistency, §

404.1527(c)(4), specialization, § 404.1527(c)(5), and other factors that tend to support or contradict

the opinion, § 404.1527(c)(6).

Turning to the medical evidence in this case, on September 23, 2010, Dr. Groskopp

completed a "Physical Residual Functional Capacity Questionnaire" based upon three prior

examinations of Williams, dating back to April 1, 2010. Dr. Groskopp diagnosed Williams with

bilateral carpal tunnel syndrome/Dupuytren's contractures of hands, S/P lumbar spinal fractures x

4, spondylolisthesis and degenerative disc, and fibromyalgia. (Tr. 594.) Dr. Groskopp noted

Williams's symptoms included: "pain, swelling [and] numbness in the hands; pain in feet, back,

neck, shoulders 'all over'; fatigue!!; insomnia; mental fogginess; depression." (Tr. 594.) Dr.

Groskopp added that the nature, location, frequency, severity and precipitating factors of Williams's

pain included: "multiple areas of muscle, 17 out of 17 'trigger' points – daily!!" (Tr. 594.) Clinical

findings and objective signs were "17 Out of 17 paired trigger points" and degenerative disc disease

of the lumbar spine. (Tr. 594.) Previous treatments included "multiple surgeries; Savella; muscle relaxers, antidepressants, etc." (Tr. 594.) Dr. Groskopp opined Williams's impairments lasted or could be expected to last at least twelve months. (Tr. 594.) Finally, in Dr. Groskopp's view, emotional factors contributed to the severity of Williams's symptoms and functional limitations; and psychological conditions affecting her physical condition included depression, and obsessive compulsive disorder and post-traumatic stress disorder. (Tr. 595.)

With respect to the impact of Williams's impairments on her ability to perform work, Dr. Groskopp opined that during a typical workday Williams's pain or other symptoms frequently would be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (Tr. 595.) Dr. Groskopp stated Williams could stand/walk for about two hours, and sit for about four hours, in an eight-hour workday (with normal breaks). (Tr. 596.) In Dr. Groskopp's opinion, Williams would need to take unscheduled breaks lasting ten-to-thirty minutes apiece, five-to-six times in an eight-hour workday. (Tr. 596.) According to Dr. Groskopp, Williams had significant limitations with reaching, handling or fingering; she specified that during an eight-hour working day Williams could use her hands to grasp, turn or twist objects 0 to 10% of the time; and could use her fingers for fine manipulations only 25% of the time; and these limitations applied to both right and left hands and fingers. (Tr. 597.) Dr. Groskopp indicated Williams's impairments were likely to produce "good days" and "bad days" and, as a result of her impairments, Williams was likely to be absent from work on average more than four days per month. (Tr. 597.) It was Dr. Groskopp's opinion that the symptoms and limitations described above have applied since 2007. (Tr. 598.)

Page 7 - OPINION AND ORDER

On May 18, 2012, in response to an inquiry by Williams's counsel, Dr. Groskopp confirmed she was still treating Williams, and the limitations set forth in her opinion of September 23, 2010, were still applicable. In addition, Dr. Groskopp updated Williams's medical status to show Williams was additionally being treated for "abdominal pain/vomiting and pancreatitis." This updated documentation was transmitted electronically on July 10, 2012, to the Social Security Office in Eugene, Oregon. The Appeals Council considered this as new and material evidence under 20 C.F.R. 404.970, and included it in the Administrative Record. (Tr. 680-82.)

At the hearing before the ALJ, the impartial VE testified that a worker subject to the limitations set forth by Dr. Groskopp in the "Physical Residual Functional Capacity Questionnaire" would not be capable of sustaining any form of competitive gainful employment. (Tr. 72) That is, no work existing in significant numbers in the national economy would be available to an individual so limited.

Thus, Williams's treating physician, Dr. Groskopp, provided objective medical evidence in support of her determinations regarding the impacts of Williams's impairments on her ability to perform sustained work on a daily basis. In order for the ALJ to disregard this medical source evidence he was required to set forth clear and convincing reasons supported by substantial evidence in the record. Alternatively, the ALJ may reject Dr. Groskopp's findings if they were contradicted by another acceptable medical sources. In that event, the ALJ must still provide specific and legitimate reasons supported by substantial evidence. Additionally, the ALJ must apply the factors set froth in 20 C.F.R. 404.1527(c)(2)-(6). *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it.

The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion.")

In his written decision the ALJ stated: "Dr. Groskopp's opinion is directly controverted by the objective findings of Dr. Solomon and unsupported by the record. Thus, I give no weight to Dr. Groskopp's opinion." (Tr. 24.)    Dr. Solomon performed a consultive examination of Williams in December 2010. In his findings, the ALJ set forth Dr. Solomon's impressions and conclusions, including Dr. Solomon's finding with respect to both of Williams's hands and to her back that the complaints of pain outweigh physical exam findings. (Tr. 24, 544.) The ALJ also cited to other medical evidence in the record – Dr. Paul Sternenberg, an orthopedic specialist, and physicians from the State Disability Determination Services ("DDS"). *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) (Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.) Dr. Sternenberg found Williams had "full functional range of motion of her elbows wrist and all digits on both hands." (Tr. 514.) According to Dr. Sternenberg, Williams had "5/5 strength with normal muscle tone of all interosseous muscles, flexor digiti minimi muscles and abductor pollicis brevis muscles bilaterally." (Tr. 514.) The ALJ also cited to the reports of the non-examining physicians from DDS whose findings were consistent with Dr. Solomon's. (Tr. 24, 74, 91, 111, 130.)

As an initial matter, Williams challenges whether there is a conflict between Drs. Groskopp's and Solomon's assessments. Dr. Solomon noted Williams's primary diagnosis was chronic back pain, chronic hand pain, fibromyalgia and bipolar disorder. Dr. Solomon, however, concluded the constancy of Williams's back pain was "probably in excess of the degree of true spine pathology."

(Tr. 544.) In fact, Dr. Solomon's ultimate conclusion was, "Overall impressions are consistent with chronic pain." (Tr. 544.) That is, the severity and disabling impact of Williams's pain are a product of both her physical conditions, as diagnosed by Dr. Solomon, along with psychological factors. Indeed, Dr. Solomon diagnosed Williams as bipolar. Such a determination is consistent with Dr. Groskopp's finding that psychological conditions, including depression, obsessive compulsive disorder and post-traumatic stress disorder impacted Williams's physical condition. Consequently, Dr. Groskopp and Dr. Solomon agreed Williams's pain arose from an objective, medically verifiable, severe impairment. Dr. Solomon acknowledged Williams's subjective symptoms, but attributed those impairments to a "considerable psychiatric overlay." (Tr. 544.) Moreover, Dr. Solomon did not address any potential functional impacts of Williams's impairments. Thus, in giving Dr. Groskopp's medical opinion no weight, the ALJ also ignored Dr. Solomon's repeated references to the psychological component of Williams's pain. *See Lester*, 81 F.3d at 829-30 ("Given that the consequences of Lester's physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments taken together result in limitations equal in severity to those specified by the listings."); *see also* 20 C.F.R. §404.1523 ("we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"); 20 C.F.R. § 404.1526 (medical equivalence of combined impairments). The medical opinion evidence of both Dr. Groskopp, the treating physician, and Dr. Solomon, the examining physician, established that Williams's chronic pain involved both physical and psychological factors. The two doctors concur on the physical pieces, *i.e.*, back and wrist pain, fibromyalgia, and bipolar, and both doctors agree there is a psychological

Page 10 - OPINION AND ORDER

impact on Williams as well.  The dispute, if any, between the doctors is the subjective level of severity.

Applying the § 404.1527(c) factors the ALJ must rely upon, the record is clear Dr. Groskopp had the treating relationship and examined Williams more frequently.  In fact, Dr. Solomon performed a one-time consultive examination and had no treating relationship or follow-up examinations with Williams.  Moreover, the chronic low back pain is only one of Williams's severe impairments Dr. Groskopp relied upon for the imposed limitations on Williams.  (Tr. 19-20 (ALJ sets forth almost a dozen "severe impairments").)  In contrast, Dr. Solomon's assessment considered only her back and hand pain.  A review of the record reveals numerous treatment notes and assessments from Dr. Groskopp and a lone, two-page report from Dr. Solomon.  The ALJ's decision does not include any discussion of the relevant factors that must be considered when the treating source opinion is not given controlling weight.  In fact, there is no indication in the record the ALJ applied even a single factor set forth in 20 C.F.R. § 404.1527(c) in reaching his decision here.

Next, the ALJ failed to explain the basis for his conclusion that Dr. Solomon's objective findings indicated Williams can perform work and "directly controverted" Dr. Groskopp's opinion.  This is particularly important because Dr. Solomon's opinion does not challenge Williams's subjective reports of debilitating pain and their functional limitations.  In fact, Dr. Solomon's examination did not include any assessment of Williams's restrictions.  It is the ALJ's duty to develop the RFC, but the failure of Dr. Solomon to opine regarding Williams's (in)ability to perform work in an eight-hour day on a sustained basis supports the view that there is no conflict between Dr. Groskopp's and Dr. Solomon's assessments.

Next, both Drs. Groskopp and Solomon diagnosed Williams with fibromyalgia, which Dr. Groskopp relied upon for Williams's functional limitations. Specifically, Dr. Groskopp found fibromyalgia was confirmed by 17 of 17 trigger points. Dr. Solomon's diagnoses of Williams's fibromyalgia supports this assessment. Fibromyalgia is demonstrated by the clinical signs of the trigger points found by Dr. Groskopp and is also demonstrated by the symptoms of "all over pain" and "fatigue" assessed by Dr. Groskopp based upon several clinical contacts. *Benecke v. Barnhart*, 379 F.3d 587, 589-90, 594 n.4 (9th Cir. 2004) ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis."). Although Dr. Solomon confirmed the fibromyalgia diagnosis, there is no indication he assessed trigger points or considered the severity of the pain and fatigue related to that impairment. *See* SSR 12-2p ("Evaluation of Fibromyalgia"). As such, Dr. Groskopp's assessment of the impact of Williams's fibromyalgia was uncontroverted.

In addition, Dr. Solomon noted Williams's history of left wrist fracture with multiple surgeries and right carpal tunnel syndrome surgery, along with release of Dupuytren's contracture of the right hand. Dr. Groskopp identified these conditions as contributing to Williams's limitations with handling and fingering. Dr. Solomon's second impression was "chronic hand pain and dysfunction. She does have prior surgeries." (Tr. 544.) Additionally, Dr. Solomon found "evidence of an early Dupuytren's contracture in the right hand;" and his testing revealed "some give-away weakness in both hand intrinsics and finger flexors and grip in both hands." (Tr. 544.) Thus, once again, Drs. Groskopp and Solomon agree upon the objective medical impairments.

In sum, Dr. Groskopp made clear that emotional factors contributed to Williams's symptoms and functional limitations, and psychological conditions affected her physical condition. Dr. Solomon concurred with Dr. Groskopp's objective findings and diagnosed chronic pain, involving physical and psychological factors. In light of the objective medical evidence set forth by both doctors, the ALJ's decision to rely upon Dr. Solomon's one-time assessment of Williams's subjective experiences instead of Dr. Groskopp's evaluation, based upon a sustained treating relationship with Williams, is not supported by substantial evidence.

Contrary to his explanation, the ALJ actually relied upon the subjective, rather than objective, findings of Dr. Solomon to reject Dr. Groskopp's functional limitations. Specifically, the ALJ relied upon Dr. Solomon's subjective impressions of suspected psychiatric overlay; pain complaints out weighing physical exam findings; and finding the degree of weakness and debility in excess of what would be expected. (Tr. 24.) The ALJ's reliance on Dr. Solomon's views of Williams's pain is an insufficient basis to discredit Dr. Groskopp's opinions and ultimate conclusions concerning the severity and functional impacts of Williams's multiple severe medical impairments.

Nor does the ALJ explain his reliance has upon Dr. Sternenberg's failure to recommend surgery. Specifically, the absence of a surgical treatment does not conflict with any of Dr. Groskopp's findings with respect to Williams's functional limitations imposed by her multiple severe impairments, including fibromyalgia. Dr. Groskopp's findings do not suggest any of Williams's impairments require, or would benefit from, additional surgical interventions. Similarly, none of Dr. Groskopp's determinations are grounded in restricted range of motion in the elbows wrists and all digits in both hands or strength and muscle tone.

Lastly, the ALJ gave "great weight" to the opinions of the DDS non-examining physician. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831; 20 C.F.R §§ 404.1527(d)(2) and 416.927(d)(2).

After a careful review of the record, it is clear the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence,[2] for crediting the opinion of Dr. Solomon over that of Dr. Groskopp. Moreover, the ALJ did not apply the factors in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to give Dr. Solomon's opinions over those of Dr. Groskopp's. Accordingly, this case is reversed and remanded for the ALJ to consider Dr. Solomon's opinion in light of the psychological factors he referenced and to determine the appropriate weight to allow Dr. Groskopp's assessment of Williams's limitations in light of the § 404.1527(c) factors.

II.    Williams's Testimony

Williams maintains the ALJ failed to provide clear and convincing reasons for rejecting her testimony. The Commissioner contends the ALJ found Williams's testimony about the intensity, persistence and limiting effects of her symptoms were not entirely credible. According to the Commissioner, the ALJ set forth clear and convincing reasons supported by substantial evidence for the credibility finding. (Tr. 28-29.) The Commissioner insists the ALJ discounted Williams's testimony because she made conflicting statements regarding her ability to work full-time. Moreover, Williams's testimony concerning her activities of daily living were inconsistent with her alleged limitations. The Commissioner contends Williams failed to seek treatment and follow her

---

[2]The court need not decide whether the clear and convincing or the specific and legitimate standard applies here, as the ALJ's decision does not satisfy even the less rigorous specific and legitimate standard.

providers' recommended course of treatment.  Finally, the Commissioner argues that when considered with the other reasons, the ALJ properly considered the objective medical evidence to disregard Williams's symptom testimony.

During the hearing, Williams alleged her most limiting condition was her pain.  She stated that on certain days she had difficulty walking, writing, typing, picking up things, and opening things.  She testified she could not open her hands fully and had trouble carrying a gallon of milk.  Williams reported her pain medications included Tramadol 100 mg, four times daily, extra strength Tylenol, and an anti-inflammatory.  She also stated there are no further surgeries recommended or scheduled.  Williams does not participate in physical therapy but does use a non-prescribed cane.

Williams testified that about a year ago, she intended to apply for a full-time position in a medical clinic, but the job was filled before she could apply.  In addition, Williams conducted a part-time eBay business and sold license plates in South America after she stopped working in 2006.  Further, she remained a licensed optician until 2010, when her licensed lapsed.  Williams stated that as a member of her church she volunteers at least two hours per week and discusses the Bible with others.

The ALJ is required to engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007.).  First, the ALJ must determine whether claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted); *accord Lingenfelter*, 504 F.3d at 1036.  The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has

alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (emphasis in original); *see also Reddick,* 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

Next, if a claimant meets the first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1281; *see also Carmickle v. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008) ("The only time this standard does not apply is when there is affirmative evidence the claimant is malingering.").

Here, at Step Two of the five-step sequential disability determination analysis, the ALJ determined Williams suffered from numerous severe impairments – fibromyalgia; status post lumbar fusion, fractures, spondylosis, and spondylolisthesis; status post left wrist open reduction internal fixation and hardware removal; status post carpal tunnel syndrome release, right trigger thumb, and Dupuytren's contracture release; mild osteopenia bilaterally in her hands; and bilateral metatarsophalangeal osteoarthritis and bunions. (Tr. 21-22.) While the ALJ subsequently determined those impairments did not meet or medically equal the listings at Step Three, the ALJ's impairment finding at Step Two of the analysis indicates Williams presented objective medical evidence of underlying impairments that could reasonably cause some degree of the alleged symptoms. *See Bunnell,* 947 F.2d at 344 (The appropriate standard for evaluating pain in social security cases requires claimant to produce medical evidence of an underlying impairment which is

reasonably likely to be the cause of the alleged pain.  If such evidence is produced, medical findings which support the severity of pain are not required.)  Because Williams presented objective medical evidence of an underlying impairment, and there is no evidence of malingering, the ALJ was required by the second step of the credibility analysis to provide clear and convincing reasons for rejecting Williams's testimony. *See Lingenfelter*, 504 F.3d at 1036.  Thus, the court must determine whether the ALJ satisfied that burden.

In assessing Williams's credibility, the ALJ concluded Williams's pain and symptom testimony was inconsistent with the RFC he developed and, therefore, her statements must not be fully credible.  (Tr. 23.)  In fact, the ALJ stated: "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" her RFC.  (Tr. 23.)  The ALJ cited two examples for his adverse credibility finding.  The ALJ determined Williams was not fully credible because "[s]igns and findings upon objective examination simply do not reflect the degree of disability alleged by the claimant." (Tr. 23.)  Specifically, the ALJ cited Williams's attempt a year and a half prior to apply for full-time work, and her part-time eBay business and sale of license plates in South America, post 2006.  In addition, the ALJ noted Williams's volunteer work at her church and her activities of daily living.  (Tr. 23-24.)

The evidence considered by the ALJ was appropriate for assessing a claimant's credibility. *See* SSR 96-7p, 1996 WL 374186, at *3 (setting forth factors to consider when assessing credibility, including daily activities).  As the Ninth Circuit previously explained, the ALJ is permitted to consider daily living activities in his credibility analysis; however, "[t]he ALJ must make specific

findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (internal quotation marks and citations omitted; alterations deleted). "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

As a threshold matter, the ALJ's finding that Williams is not credible based upon his RFC completely disregards the role of the credibility analysis in determining an RFC. In *Carlson v. Astrue*, 682 F. Supp. 2d 1156 (D. Or. 2010), "the ALJ first found [the claimant]'s testimony 'not credible to the extent' his statements 'are inconsistent with the' RFC." *Id.* at 1167. The court held "the ALJ's analysis reverses the manner in which he must consider credibility. Rather, the ALJ must consider a claimant's credibility in the course of assessing a claimant's RFC." *Id.* (citing 20 C.F.R. § 416.945(a)(3); SSR 96-8p, at *7)). Thus, the ALJ's analysis was flawed because "[n]o authority suggests an ALJ may reason that a claimant is not credible based upon the claimant's RFC assessment." *Id.*

As in *Carlson*, the ALJ here first found that Williams's statements concerning the intensity, persistence and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 23.) In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms including pain, that are reasonably attributed to a medically determinable impairment." SSR 96-8p; *accord* 20 C.F.R. § 416.945(a)(3). While the ALJ is permitted to state his conclusion and then support his finding with substantial evidence, *see Black v. Astrue*, 10-cv-

Page 18 - OPINION AND ORDER

06409-MO, 2011 WL 6130534, at * 6 (D. Or. Dec. 7, 2011), he may not state his conclusion without providing sufficient support. There is no authority cited by the Commissioner to permit an ALJ to evaluate a claimant's credibility based upon the ALJ's subsequent RFC assessment and it was error for the ALJ to do so in this case.

Moreover, the ALJ is not permitted to premise a credibility finding on a lack of medical support for the severity of Williams's pain. *Light v. Social Security Administration,* 119 F.3d 789, 792 (9th Cir. 1997) ("To find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony."); *Bunnell,* 947 F.2d at 343 ("Once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.")

Indeed, the objective medical evidence is consistent with pathology that may be expected to give rise to Williams's symptoms. Whether the severity of weakness and debility claimed by Williams *exceeds* the expectations is different from medical evidence that *contradicts* what is expected based upon the objective evidence. In these circumstances, the Ninth Circuit requires claimant to produce only objective medical evidence of an impairment or impairments, and show that the impairment or combination of impairments *could reasonably be expected to* produce some degree of symptom. *Smolen,* 80 F.3d at 1282 (emphasis in original). On point here, the Ninth Circuit held:

> The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof . . . . Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment

and the symptom . . . . By requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon . . . . Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.

*Id.*

Here, the opinion of Dr. Solomon, upon which both the ALJ and the Commissioner rely, expressly stated there was objective medical evidence of an impairment which could reasonably be expected to produce some degree of symptom. Both Dr. Solomon and Dr. Groskopp agreed Williams had impairments that could produce some degree of symptom. That the objective evidence may not prove the severity or degree of symptom claimed does not equate to objective evidence that contradicts Williams's statements. Dr. Solomon concluded his "overall impressions are consistent with chronic pain." In short, Dr. Solomon's findings do not provide a sound basis for the ALJ Williams's alleged limitations were inconsistent with the medical evidence."

The "Physical Residual Functional Capacity Questionnaire" does not contradict Williams's allegations. That report, completed in September 2010, indicates that while Williams is capable of some activities, ultimately, she is not qualified for competitive work situation because her impairments are likely to prevent her from working on four or more days each month. There is no suggestion that Williams is completely incapacitated and unable to participate in her life on days in which her pain is manageable.

Additionally, the ALJ failed to make specific findings regarding the transferability of Williams's daily activities. While in a general sense many of the activities set forth in the Questionnaire are indicative of the physical capacity to be employed, they are not determinative

given Williams is likely to be absent from work four or more days each month. *See Johnson v. Astrue*, No. 10-cv-3052-CL, 2011 WL 4501230, at \*8 (D. Or. Sept. 27, 2011) ("If a claimant's level and type of activity [are not] inconsistent with her claimed limitations, her activities have [no] bearing on her credibility.").

Next, the ALJ's reliance on Williams's attempt to find full-time work cannot provide clear and convincing evidence for rejecting her symptom testimony. Williams was not hired for the position and, thus, there is no evidence she would have managed a five day a week/eight hour a day position.

Nor does Williams's part-time eBay business and "sold license plates in South America" demonstrate she was capable of persisting in substantial gainful activity. The ALJ's conclusory finding that "this work activity is inconsistent with complete disability," does not explain how such activity will transfer to show Williams was capable of full-time work. Similarly, the ALJ failed to explain show how the fact she "remained a licensed optician until 2010 when she permitted her license to lapse" clearly and convincingly contradicted the credibility of her claimed subjective limitations. There is no requirement Williams be "utterly incapacitated" in order to be disabled. *Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *accord Orn*, 495 F.3d at 639. There is no evidence in the record that Williams stopped working for reasons other than her medical impairments.

The ALJ did not cite specific activities that were inconsistent with the associated claimed limitation. For example, Williams testified that despite prescription pain medication, she still had

Page 21 - OPINION AND ORDER

pain. She had continued limitations in the use of her hand and continued to talk to her doctors about it. When asked if she continued to apply for other work, she testified she had not "because my symptoms have progressively gotten worse over the last year, year and a half. And I, I know I can't do the tools. I can't manipulate the tools that would be necessary. I can't walk or sit [referring to walking and sitting required by work at Medical Eyesight Center]. I love my job. I love my work. Love it, but I can't, I can't do it." (Tr. 55.)

In fact, Williams testified at the June 6 hearing that the limitations caused by the pain of her medical impairments had rendered her even more limited than what was reported by in Dr. Groskopp in her September 2010 evaluation. Williams stated she could no longer sit for four hours or stand and walk for two hours. She also testified additional breaks would be required because "sitting makes it very difficult to sit for a long time because of the pain. Walking, it's the same thing because of my feet.... They swell and along with the arthritis, I have very bad bunions and they want to do injections in my feet but OHP won't cover that either. They don't cover the ones I get in my back." (Tr. 56.) The ALJ's decision to discount Williams's pain and symptom testimony does not explain how the activities required for her involvement in an eBay business, selling license plates in South America, volunteering at least two hours each week, or attending Bible classes with others are specifically inconsistent with the limitations to sitting and standing she testified about. For example, the ALJ did not explain how Williams's limitation on sitting without breaks and standing/walking was related or discredited by her reported activities, *i.e.*, how were they inconsistent. The ALJ is required to identify specific testimony found not credible and explain what evidence undermines that testimony; and must consider each severe impairment. Moreover, the claimant cannot be penalized

for attempting to live a normal life. *Reddick*, 157 F. 3d at 722. The ALJ failed to explain what evidence undermined specific testimony by Williams such that it was not credible.

Lastly, the Commissioner argues Williams failed to pursue physical therapy. However, neither the ALJ nor the Commissioner point to evidence in the record to show a prescribed or recommended course of treatment Williams failed to pursue justification.

The court finds the ALJ failed to articulate specific, clear and convincing reasons for his decision to exclude Williams's pain and symptoms testimony from the RFC assessment and, therefore, the RFC assessment is not supported by substantial evidence. *See Lingenfelter*, 504 F.3d at 1040-41. "Nor does substantial evidence support the ALJ's five-step determination since it was based on this erroneous RFC assessment" *Id.* at 1041. As such, the court must determine whether Williams's testimony should be credited as a matter of law, or whether this case should be remanded for additional proceedings. Williams's argues that because the ALJ failed to provide clear and convincing reasons for rejecting Dr. Groskopp's and her testimony that evidence should be credited as a matter of law, *i.e.*, credited as true.

Over twenty-five years ago, in *Varney v. Secretary of Health and Human Services (Varney II)*, 859 F.2d 1396, 1398-99, 1401 (9th Cir. 1988), the Ninth Circuit adopted a credit-as-true rule in cases where the ALJ failed to provide adequate justification for rejecting a claimant's pain testimony. Simply put, in those instances, the Commissioner must accept, as a matter of law, claimant's subjective testimony where there are no outstanding issues to be resolved before a disability determination can be made and where it is clear from the administrative record that benefits would be awarded if claimant's testimony was credited. *Id.* at 1041. Subsequently, in *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009), the Ninth Circuit acknowledged that since *Varney II* was decided, a

split of authority had developed within the Circuit over whether the credit-as-true rule is mandatory or discretionary. The court in *Vasquez* did not settle the conflict, however, because it found there were outstanding issues to be resolved before a proper disability determination could be made. *Id.* at 591.[3]

Here, there are numerous physician reports, with Dr. Groskopp as the treating physician. The ALJ is permitted to give controlling weight to other medical sources, but he must rely upon substantial evidence in the record to support such a decision. In addition, the ALJ must make specific findings, supported by clear and convincing or specific and legitimate reasons, regarding Dr. Groskopp's Physical Residual Functional Capacity Questionnaire. Similarly, the ALJ is required to set forth clear and convincing reasons to discount Williams's credibility. After considering the medical sources and Williams's pain and symptom testimony, the ALJ shall determine whether Williams's impairments satisfy the severity requirements of Listing § 1.02 and § 1.04. Thus, the court is unable to find on this record that Williams is disabled and entitled to an immediate payment of benefits. Consequently, a remand is warranted for the ALJ to reconsider the medical evidence, resolve any conflicts in the record, and make specific findings regarding the medical source statements and Williams's testimony. *Compare Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("[T]here are no outstanding issues that must be resolved before a determination of disability

---

[3]The court in *Vasquez* credited claimant's testimony as true after noting that other factors may justify the application of the credit-as-true rule, even where the application of the rule would not result in an immediate award of benefits. *Id.* at 593 (*citing Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). For example, if claimant is of advanced age and had already experienced a severe delay in her application, or if it appears an ALJ ignored evidence to reach an opposite, pre-determined conclusion. *Id.* The factors discussed in *Vasquez* are neither argued nor present in this case.

can be made, and [] it is clear from the record that the ALJ would be required to find Moisa disabled if his testimony were credited.").

*Conclusion*

Based upon the foregoing, the ALJ's decision that Williams was not disabled and is not entitled to DIB under Title II of the Act and SSI under Title XVI of the Act was not based on correct legal standards or supported by substantial evidence. The Commissioner's decision is REVERSED and REMANDED for additional proceedings.

IT IS SO ORDERED

Dated this ⁄ day of March 2015

John V. Acosta
United States Magistrate Judge

Page 25 - OPINION AND ORDER